Velon H. MINSHEW et al., Plaintiffs,

v.

H. Hassell SMITH et al., Defendants.

Civ. A. No. WC–73–110S.

United States District Court,
N. D. Mississippi, W. D.

Aug. 5, 1974.

George W. Stengel, Oxford, Miss., for plaintiffs.

Lowell E. Grisham, T. H. Freeland, III, G. A. Gafford, William R. Lamb, Oxford, Miss., for defendants.

## OPINION OF THE COURT

DAN M. RUSSELL, Jr., District Judge.

Plaintiffs, adult residents of Oxford, Mississippi, who own homes fronting on either side of North 14th St. in the City of Oxford, brought this action against W. Hassell Smith; Oxford Motor Inn Developers, Inc., a Mississippi corporation predominantly owned by Smith; Holiday Inns, Inc., a Tennessee corporation doing business in Mississippi; John O. Leslie, Mayor of Oxford; and Tom M. Newberry, Administrative Official of Oxford, seeking injunctive relief, damages for the diminution in value of plaintiffs' property, punitive damages, costs and attorney fees. Jurisdiction is invoked by virtue of Title 28 U.S.C., # # 1331 and 1343, plaintiffs claiming that defendants, under color of law, have acted jointly and in a conspiracy to illegally amend the Comprehensive Zoning Ordinance of the City of Oxford without due process of law and for the purpose of discriminating in favor of Smith and his motel properties in violation of plaintiffs' constitutional rights afforded by 42 U.S.C. §§ 1983 and 1985.

The Judge in the Northern District to whom this case was assigned and the other Judge in said district having recused themselves, this Court, at their request, has undertaken to try and hear the action and resolve the issues.

The Court prefaces its opinion with a chronology of undisputed events leading up to the filing of this action.

In 1964, defendant Smith, through his corporation, constructed a motel on property formerly owned by his family, the motel, licensed as a Holiday Inn, being situated on land fronting on North Lamar, between Adams and Jefferson Streets.

On August 31, 1971, the City of Oxford adopted a comprehensive zoning ordinance, effective October 1, 1971. On the zoning map accompanying the ordinance, the motel property is shown to be a part of the Central Business District, designated C–B. On December 29, 1971, Smith, through Motor Inn, acquired property adjacent to the rear of his motel, fronting on North 14th St., herein called the Belk property. This property lies within 160 feet of the various residences of plaintiffs. Although Smith "thought" this property was in the Central Business District, it actually was in a multi-family residential area, designated as R–C. On January 27, 1972, Smith, while serving as a member of the Planning Commission of the City of Oxford, which had recommended the passage of the comprehensive zoning ordinance, applied, on behalf of Motor Inn, to re-zone the Belk property to C–B, for the avowed purpose of developing off-street parking and an expansion of the Holiday Inn. His application was filed with defendant, Newberry, the Administrative Official of the City of Oxford designated to administer the ordinance. Newberry transmitted the application to the Oxford Planning Commission which recommended to the Mayor and Board of Aldermen that it be granted. Only four of the seven members of the Commission were present, two being defendants Smith and Leslie, then a member of the Commission. After a notice of a hearing on the application was published, as required by the ordinance, plaintiffs, or some of them, appeared and protested.

No action was taken on the application by the Mayor and Board of Aldermen, and Smith later withdrew the application. A few days later, on March 27, 1972, Motor Inn, while Smith and Leslie were still on the Planning Commission, filed another application, as did also Esther L. Sneed, et al, from whom Smith had acquired a 15 foot strip of land south of the Belk property with an option to buy the remainder, herein referred to as the Sneed property. These applications were to re-zone the Belk and Sneed properties from R–C to C–B. After referral of the applications to the Planning Commission, four members, including defendant Leslie, with Smith abstaining, recommended that the applications be granted. Again notice was published, the plaintiffs appeared and protested, and on June 12, 1972, the Board of Aldermen denied the applications.

At a meeting of the Oxford Planning Commission on July 28, 1972, Leon Kotecki of Urban Consultants, Inc., Montgomery, Alabama, a firm employed by the city for advice in urban development, brought two items before the Commission for consideration. Minutes of the Commission, plaintiffs' Exhibit 9, reveal that Kotecki recommended amendments to the zoning ordinance concerning off-street parking lots in residential districts, and drainage and erosion control, the latter being of no concern here. Smith again was among four members of the Commission present who recommended to the Mayor and Board of Aldermen that the city attorneys and city engineer make a study of these two items and prepare the necessary ordinances.

On October 3, 1972, an off-street parking ordinance was adopted by the Mayor and Board of Aldermen. On October 19, 1972, plaintiffs notified the Mayor, Board of Aldermen, and members of the Planning Commission that plaintiffs believed the ordinance was invalid and passed for the purpose of enabling Smith to use his residential property on North 14th Street as a motel parking lot. On December 5, 1972, the Mayor and Board of Aldermen repealed the ordinance after being informed by plaintiffs that no public notice was given prior to enactment. A notice of the proposed amendment was published on December 6, 1972, proof of same being plaintiffs' Exhibit No. 11 herein, providing for a hearing before the Mayor and Board of Aldermen at the City Hall at 7:30 p. m., January 2, 1973. Plaintiffs appeared and objected to the passage of the amendment. However, as shown by the minutes of the Board of Aldermen, plaintiffs' Exhibit 19 herein, the amendment was unanimously adopted on January 6, 1973, and published on February 9, 1973, proof of publication being in evidence as plaintiffs' Exhibit 20. As codified, the ordinance is Section 523 of the comprehensive zoning ordinance. A copy of Section 523 is in evidence as plaintiffs' Exhibit 4 and reads as follows:

"523. Off-Street Parking in Residential District Adjoining Commercial or Industrial Districts.

Where a Central Business District Zone (C.B.) adjoins a residential district without an intervening street, but with or without an intervening alley, off-street parking lots, in connection with nearby commercial or industrial uses, may be developed in the residential districts, provided:

523.1—Such parking lots may be permitted only between the commercial or industrial district and the nearest street in the residential district.

523.2—Such lots may be used only for patrons or employees of the adjacent commercial or industrial uses. Commercial parking lots are prohibited.

523.3—Screening, not less than five (5) feet in height, shall be provided along lot lines adjoining residential property. A continuous planted buffer strip or a solid fence or wall shall be constructed and properly maintained. No signs of any type shall be permitted upon the planted buffer

strip or upon any fences or walls erected for screening purposes. The type and design of such screening shall be approved by the Planning Commission and comply with applicable ordinances.

523.4—No source of illumination of such lots shall shine directly into any window in an adjacent residence.

523.5—Egress, ingress, design, and other factors affecting development of such lots must be approved by the Planning Commission.

523.6—A permit for constructing and/or using such lots will be issued following approval of the Planning Commission. Enforcement shall be governed by Section 521 of this Ordinance. (Ord. No. 1972–19, 10–3–72; Ord. No. 1973–2, 1–31–73) Supp. No. 14.

On February 7, 1973, two days before publication of the amendment, Motor Inn acquired the remainder of the Sneed property at the corner of North 14th Street, and Jefferson. On March 29, 1973, Motor Inn, by Smith, applied for a building permit, plaintiffs' Exhibit 12, to construct a three-sided 6 foot high fence on the acquired Belk residential property fronting on North 14th St., designated R–C, which application was approved by Tom M. Newberry as "Director, Inspection and Permit Department." On March 30, a building permit, plaintiffs' Exhibit 13, was issued to Motor Inn permitting the erection of a redwood fence, 6 feet high, 125 feet on North 14th St., and 155 feet back to Holiday Inn. A zoning certificate, plaintiffs' Exhibit 13, was issued the same day certifying that the Motor Inn property on the west side of North 14th St. between Jefferson St. and Adams complied with all zoning regulations of the City of Oxford. On May 14, 1973, Motor Inn applied for a building permit, plaintiffs' Exhibit 12, to construct motel rental units on Motor Inn's property designated C–B, and for a zoning certificate for 21 rental units as an addition to the motel, a swimming pool and a parking lot. On the same day, a building permit, plaintiffs' Exhibit 13, was issued for the construction of 21 rental units as an addition to Holiday Inn, a new swimming pool and parking lot on property zoned C–B. and, on the same day, a zoning certificate was issued that the additional units, swimming pool and parking lot complied with all zoning regulations, plaintiffs' Exhibit 13.

The Court interrupts the chronology of events to point out that plaintiffs contend throughout the above sequent proceedings that defendant Smith never ceased in his avowed intention to expand the Holiday Inn, and that the enactment of Section 523 resulted from the concerted efforts of all of the defendants to assist Smith in achieving his intentions by acquiring the off-street parking space required by the ordinance to accommodate the additional units. On the other hand, defendants Smith and Motor Inn claim that such efforts to expand ceased with the denial of Smith's second application to re-zone from residential, R–C to commercial C–B, were not resumed until after the passage of Section 523 when Smith realized he could utilize the residential Belk and Sneed properties for off-street parking, and therefore could proceed with the construction of the additional motel units. The city defendants insist that Section 523 was necessitated by a defect in the ordinance adopted in 1971, which failed to provide for business concerns in need of off-street parking, where none was available except in adjacent residential areas; and that the amendment was of city-wide import and not for the purpose of favoring one business over others or discriminating against residents owning property on North 14th St., in the vicinity of Smith's acquired properties.

The parties agree that following the issuance on May 14, 1973, of the building permit for the 21 rental units, swimming pool and parking lot, the construction of all was begun and completed during the summer.

On September 19, 1973, plaintiffs filed a complaint with the Administrative Official (Newberry) for the City of Oxford alleging violations of the Oxford zoning ordinances consisting of using property zoned R–C, residential, for commercial purposes, C–B, as follows:

1. By constructing an unsightly fence, six feet in height along the frontage of the front yard of said property in violation of Section 330.02 of the Oxford Zoning Ordinances.[1]

2. By operating a motel laundry on said property.

3. By constructing a motel swimming pool on said property.

4. By constructing a motel parking lot on said property.

This complaint, a copy being filed herein as plaintiffs' Exhibit 7, was filed pursuant to sections 611, 650 and 660 of the ordinance. Section 611 provides that an administrative official designated by the Board of Aldermen shall administer and enforce the ordinance. Section 650 provides that any person may file a written complaint whenever a violation of the ordinance is alleged to have occurred, and that the administrative official shall properly record the complaint, shall promptly investigate and shall take such action as provided by the ordinance. Section 660 provides penalties for participation in zoning violations and provides that the City may take such other lawful action as is necessary to prevent or remedy any violation.

Plaintiffs allege that upon the refusal of Newberry to act upon the complaint, plaintiffs' counsel appealed directly to defendant Leslie, then the Mayor of Oxford,[2] by letter dated October 8, 1973, a copy being plaintiffs' Exhibit 8, that Smith and Motor Inn were continuing to violate the zoning ordinances as stated in plaintiffs' complaint to Newberry. The letter requested Leslie to exercise his superintending control by virtue of Section 2–25 of the general ordinances of the City of Oxford delegating to the Mayor the superintending control of all of the officers, employees and affairs of the city in seeing that the laws and ordinances of the city are enforced and executed.

Receiving no reply from either Newberry or Leslie, plaintiffs filed this action on November 19, 1973.

The Court notes to begin with that plaintiffs did not file their action against the City of Oxford or the Board of Aldermen, nor against the City Planning Commission or any of its members. The only city officials named are the Mayor and Administrative Officer who failed to respond to plaintiffs' complaints of September 19 and October 8, 1973. Although plaintiffs have also failed to indicate in their complaint whether they are suing Elliott and Newberry in their representative capacities or as individuals, the Court concludes that they are sued as representatives of the City as all allegations and proof were addressed to their actions in their official capacities, and, for this reason finds that the necessary state action for a suit founded on 42 U.S.C. § 1983 is present. See Jennings v. Patterson, 488 F.2d 436, 5th Circuit Court of Appeals, 1974. Also, although the defendants in their pre-trial motions to dismiss or in their answers averred that plaintiffs had failed to exhaust their remedies in state court, they now admit such is not required in an action based on §§ 1983 and 1985.

■ In connection with the motions to dismiss, during and at the conclusion of the trial all defendants renewed their

---

1. Notwithstanding other provisions of this Ordinance, fences, walls, and hedges may be permitted in any required yard, or along the edge of any yard, provided that no fence, wall, or hedge along the sides or front edge of any front yard shall be over two and one-half (2½) feet in height.

2. According to the complaint filed herein, John O. Leslie, prior to July 1, 1973 was chairman of the Oxford Planning Commission. Since that date he has been and is the Mayor of Oxford.

motions to dismiss. The Court granted the motion of Holiday Inns, Inc., to be dismissed on the grounds that plaintiffs failed to prove any fore-knowledge on its part that Smith or Motor Inn was allegedly violating zoning ordinances or any intent on its part to conspire with any of the defendants in the alleged violations. As to the remaining motions to dismiss, on which the Court reserved ruling, none of the defendants raised the issue of the City, its Mayor and Board of Aldermen and the Planning Commission and its individual members being necessary parties to an action contesting the validity of a zoning ordinance. The Court raises this issue on its own, being extremely doubtful that it would have authority to declare an ordinance invalid or enjoin its operation in the absence of at least the City and/or its governing authorities having been made parties. See Section 11–45–25, Mississippi Code of 1972. In order, however, to meet the argument that a suit against the Mayor and Administrative Official in their representative capacities is sufficient to bind the City, the Court considers plaintiffs' attack on the validity of Section 523 in the light of South Gwinnett Venture v. Pruitt, 491 F.2d 5, 5th Circuit Court of Appeals, 1974, in which Judge Coleman held that local zoning is a quasi-legislative procedure, not subject to federal juridical consideration in the absence of arbitrary action. Further Judge Coleman saw no viable distinction between zoning board functions involved in the adoption of a comprehensive zoning plan and those exercised in the reclassification of a piece of property under an existing plan. Presumably the same test would apply to an amendment to a comprehensive zoning plan, such as here, as long as notice of same comported with due process (see 17–1–17, Mississippi Code of 1972, which provides that zoning regulations may be amended upon at least fifteen days' published notice specifying a time and place for said hearing) ; and also as long as the amendment complies with Section 700 of the Oxford zoning ordinance which pro-

vides that it may not be amended except to correct a manifest error therein or because of changed or changing conditions in a particular area of the municipality generally as reasonably necessary to the promotion of the public health, safety or general welfare. The Mississippi Supreme Court has held that in order to justify the rezoning of property from its original classification to another, the petitioner must show that there was a mistake in the original zoning ordinance or that the character of the neighborhood has changed to such an extent to justify the reclassification. Hinds County Board of Supervisors v. Covington, 285 So.2d 143. The same court in Smith v. City of Gulfport, 269 So.2d 345, cited Lewis v. City of Jackson, 184 So.2d 384, in which it was held that a failure to find that conditions had changed so as to make an amendment to the best interest of the community was in itself unreasonable, arbitrary and capricious. Before considering plaintiffs' evidence, the Court notes that the city here based the justification for amending its zoning ordinance by the adoption of Section 523 on a finding that the original ordinance provides for off-street parking but fails to provide for off-street parking lots in residential districts adjacent to comercial or industrial districts—in other words, the original comprehensive zoning ordinance contains a manifest error. This finding is incorporated as a preamble to the ordinance appearing in the minutes of the Board of Aldermen, a copy being in evidence as plaintiffs' Exhibit 19.

As for plaintiffs' evidence, the factual events chronicled above were agreed to by stipulation or evidenced by exhibits. Plaintiffs additionally offered live testimony. Dr. Velon H. Minshew, chairman of the Geology Department and Mineral Resources at the University of Mississippi, and his wife are among the plaintiff residents of North 14th St., the Minshew residence being directly across North 14th St., from the Sneed property. Dr. Minshew stated that he is a consultant to the Governor of the state

on environmental planning for the Mississippi Gulf Coast in its recovery efforts following the 1969 hurricane, Camille. He teaches two courses at the University on land capability and how cities should develop. He described the North 14th St. area, prior to the Motor Inn improvements, as residential, middle income property. Two residential homes were located on the Belk and Sneed property prior to Smith's acquisition, which after his acquisition, were razed. He identified photographs he had taken of these residences, and the area as it now exists with the fence, parking lot and swimming pool thereon. He stated that the enjoyment of his own home had decreased due to the noise from the swimming pool and parking lot, and particularly due to the lights illuminating the pool and parking lot, and car headlights as they flash through the slatted fence. He stated that the elevated lights from the pool and parking area were bright enough that is able to read a newspaper on his front porch with no other source of illumination. He appeared with other plaintiffs at the various meetings before the Mayor and Board of Aldermen to protest Smith's applications to re-zone. He identified a map of the City of Oxford which he had prepared based on the official zoning map, showing that within the Central Business District, 51% of the area was zoned commercial, with available areas for off-street parking, and that, by virtue of Section 523, only three residential areas could be utilized for commercial off-street parking, including the area utilized by Holiday Inn.

Dr. Dwight Cook, chairman of the Department of Urban Planning at the University, testified that he had 20 years' experience in city planning, including serving as a member of the Oxford Planning Commission from 1966 to 1968. He had familiarized himself with Section 523. He pointed out that the city had never established a Board of Adjustment as authorized by its zoning ordinance, and that the normal procedure where there is insufficient off-street parking for a commercial business would have been by a petition to the Board for a variance if certain criteria are met. His objection to the enactment of Section 523 was that it has allowed an intrusion into an area where such is not permitted, specifying that the intrusion was the swimming pool and garbage disposal located in part within the fenced area. On cross-examination, he admitted that the entire zoning ordinance nowhere mentions swimming pools, conceded that a swimming pool could be constructed on a residential lot as an accessory to a residence, but pointed out that this pool, adjoining the parking lot, is in an area designated as a parking lot. He also said that the error which had occurred in this case was to allow Holiday Inn to construct additional units for which it could not provide off-street parking. Actually, Smith acquired the permit to erect a fence around the parking area before he acquired the permit to construct the additional motel units, pool and paved parking lot.

Both defendants Newberry and Leslie were called as adverse witnesses. Newberry, referring to defendants' Exhibit 1, being a map of the future land use of Oxford, projected by Thomas Seabrook and Associates Planners, Inc., of Memphis, Tennessee, stated that the area west of North 15th St., which includes the parking lot and plaintiffs' residences, was projected to become commercial between 1970 and 1975. He stated that in the summer of 1972, he and Kotecki, of Urban Consultants, walked the entire Central Business district and determined that there was a lack of off-street parking for commercial businesses. They concluded that the problem could be solved by the adoption of an amendment to the zoning ordinance allowing off-street parking in a residential area if there were no intervening alley or street. Using Minshew's map of the Central Business district, he pointed out the residential areas available for off-street parking under Section 523, naming the commercial establishments who could utilize such areas as the Holi-

day Inn, the Elliott Funeral Home, the Chamber of Commerce, the Church of Christ, North Mississippi Savings and Loan Association, and others. In answers to interrogatories Newberry stated that there had been 48 applications to change the original zoning ordinance since its inception in October 1971, 40 by private parties, 2 by the Planning Commission and 6 initiated by members of the Board of Aldermen. He admitted that Smith was on the Planning Commission when he sought to re-zone the Belk and Sneed properties, but pointed out that those applications were denied. Although admitting that Section 330.02 of the zoning ordinances permits no fences or shrubbery to exceed a height of 2½ feet on the front of a lot, he approved Motor Inn's permit for the construction of a 6 foot fence by virtue of Section 523.3 which provides that screening for off-street parking in a residential area shall not be less than 5 feet in height along lot lines adjoining residential property. He approved a permit for the swimming pool, saying that he did not find its construction in violation of any city ordinance. He admitted that no permit for off-street parking under Section 523 had been issued to anyone but Smith on behalf of Motor Inn.

Leslie, the present Mayor of Oxford, served on the Planning Commission from 1966 until before he was elected Mayor in 1973. Referring to the plaintiffs' complaint of October 8, 1973, plaintiffs' Exhibit 8 herein, Leslie said he checked the complaint with city zoning ordinances and could find no violation. He referred the letter to the City Attorney. He was not present at the Planning Commission meeting when Kotecki appeared to propose an amendment to the zoning ordinance for off-street parking, plaintiffs' Exhibit 9, nor was he a city official at the time Section 523 was enacted. He stated that he had never discussed the amendment with Kotecki, Newberry or Smith and denied conspiring with Smith or anyone else to get off-street parking for Smith.

Plaintiffs called Wayne Marsh, secretary of defendant Holiday Inns, Inc. as an adverse witness. Marsh conceded a license agreement with Smith on behalf of Motor Inns for his Oxford Motel to be licensed under Holiday Inn Systems, and acknowledged that the franchisor reserved the right to approve Smith's plans for additional units, swimming pool, and parking area. However, this witness stated that a part of the licensing agreement was that the licensee comply with all local rules and ordinances and that the franchisor had no knowledge of Smith's problems with the city zoning ordinances until this suit was filed. It was on the basis of this testimony and that of Holiday Inns' senior vice-president, and plaintiffs' failure to produce any evidence to the contrary that the Court, at the end of the trial, dismissed Holiday Inns, Inc. as a party defendant.

Plaintiffs also called Smith as an adverse witness. He recited his attempts to re-zone the Belk and Sneed properties in order to add to the motel units. He stated that he bought a portion of the Belk property in 1968 at a time when it was residential. Under the adoption of the comprehensive zoning ordinance and map in October 1971 this portion was designated commercial. In December 1971 he purchased the remainder of the Belk property, a piece 110 by 160 feet, adjacent to the Sneed property, which he thought was commercial, but was actually residential. After his applications to re-zone were denied, he dropped his plans for improvements to the motel, which at that time were for 44 additional units, hoping that he could still get the Belk and Sneed properties re-zoned upon the advent of a new administration. He denied conspiring with any city officials to circumvent the zoning ordinances and particularly denied talking to Leslie or Newberry except in meetings of the Planning Commission regarding his attempts to re-zone which failed. In response to his own attorney's questioning he said lights for the parking lot were included in his designs

approved by the Planning Commission, and that they are special lights designed not to shine into neighbors' residences. He admitted that the City did not inspect them after installation. Under questioning by plaintiffs' counsel, Smith admitted that he paid $52,000.00 for the Belk property and had agreed to pay $55,000.00 for the Sneed property.

Plaintiffs offered two more witnesses, one adverse, John M. Reed, Jr., a senior vice-president of Holiday Inns, Inc., who confirmed the testimony of Marsh that Holiday Inns, Inc. did approve the plans of Smith's proposed improvements, including the parking lot. However, the fact that the franchisor had no knowledge of the zoning altercation remained unchallenged.

The remaining witness, Boyce G. Bratton, who is one of the plaintiffs, testified that the additions to the Holiday Inn had changed the appearance of the neighborhood. Instead of a quiet, residential neighborhood, there are now bright lights surrounding the motel parking area and over the pool. Although a high fence has been erected it does not prevent car lights from shining through. Guests at the pool are noisy and, on two nights prior to this hearing, the lights and noise emanated from the area until midnight.

Following Smith's testimony as to the sums he paid for the Belk and Sneed properties and before resting their case, plaintiffs announced they were abandoning their claim for compensatory damages, seeking injunctive relief only. They amended this to say that they were not abandoning their right to punitive damages and attorney fees. Actually the only claim for damages in the complaint was for diminution in the value of plaintiffs' property as to which they offered no proof. Following the conclusion of plaintiffs' case, all defendants renewed their motions to dismiss, the Court granting the motion of Holiday Inns, Inc. and again reserving ruling on the remaining motions.

The first witness for the defendants was Leon Kotecki, an employee of Urban Consultants, Inc., Montgomery, Alabama, and presently its Director of planning. He has been a consultant in urban planning for a number of cities in Illinois, Tennessee, and Mississippi as well as in Alabama. He was employed by the City of Oxford in December 1971 with the responsibility of reviewing zoning ordinances and amendments. In June 1972, the City requested him to make a study of traffic flow in the Central Business district to determine if there was adequate off-street parking areas, to relieve congested, narrow streets in the business area. He had no conversation with Smith or any city official before making his study and recommendations. He undertook a survey of the Central Business district, counting the land uses and the number of parking spaces. He acknowledged that Newberry walked with him, pointing out the perimeter of the business district, but denied that Newberry otherwise assisted him, saying that he did his work alone. He mapped the area, surveyed traffic with no notice to anyone, and collated the information that he gathered. He identified a large map he prepared of the downtown area reflecting the data he collected, a smaller replica being admitted into evidence as defendants' Exhibit 2–A. His conclusion was that there was a great need for off-street parking in the downtown area because of numerous narrow streets on which no parking is allowed. His proposal was to allow off-street parking for private enterprise on residential property if no street intervened. He said that the zoning ordinance adopted in 1971 had no such provision, and, in his opinion this omission was an error or a mistake. He also said there was a greater need for off-street parking in June 1972 than in December 1971. His survey and analysis took a month to complete. Added to that was the time it took to prepare the amendment, now Section 523, which he said was a commonly accepted solution for problems that have arisen in small cities in the southeastern states. He made his recommendations to the Planning Commission based on available

parking areas and projected land use. He analyzed his proposal to see if it would result in preferential treatment to any one and found three areas that were available to a number of commercial enterprises. He discussed two proposals at a meeting of the Planning Commission, the off-street parking and provisions for sanitation improvements unrelated to the parking problem. He did not remember whether Smith was present or not, and again said he had had no discussion with anyone before making his recommendations; that they were his alone.

Paùl Barlow, an employee of the Research and Development Center of the State of Mississippi in city planning was the last witness to testify. He stated that he had a contract with Seabrook Associates to bring the zoning ordinances of Oxford up-to date. He said the old zoning map had too many classifications, and Seabrook prepared the comprehensive zoning ordinance adopted in 1971 and had a new map drawn eliminating some classifications, while following generally the old lines. He was familiar with the Holiday Inn location. When asked why the Central Business district line ran through the property east of the Holiday Inn and not along a street, his response was that the area on either side of what would have been an extension of North 13th St. contained a lot of residences, which, if within the Central Business district line, would have been a non-conforming use. He agreed that its projected use was commercial. He also agreed with Kotecki that the comprehensive plan did not provide for off-street parking in a residential area for commercial enterprises, and that Section 523 corrected this error by providing three separate areas which could be utilized. He stated that Oxford had an increasing need for off-street parking to reduce traffic injuries and contribute to the health and safety of the public.

In their post-trial brief plaintiffs contend that they are not barred from relief by failure to exhaust state remedies or by a statute of limitations providing for 10 days in which to appeal a municipal decision to a state court by way of a bill of exceptions. The defendants and the Court agree that plaintiffs are not so bound. See Hobbs v. Thompson, 5 Cir., 448 F.2d 456. Other contentions involve the claimed illegality of the motel parking lot under Section 523; the illegality of the swimming pool, and other violations such as the fence, the parking lot and swimming pool lights, and the necessity of equitable relief. Related to this last contention, plaintiffs argue that the doctrine of balancing inconvenience does not apply, nor does the doctrine of laches apply.

■■ Discussing each in turn, the Court observes that both plaintiffs and defendants have treated the attack against the validity of Section 523 as an action against the City, whereas, as noted above, the City itself is not a party to the suit. Nevertheless, the Court has given due consideration to the circumstances leading up to the adoption of the amendment, and, while realizing that Smith's almost unbroken chain of efforts to make additions to the Holiday Inn could well infer a concerted action on the part of Smith and the two city defendants to accomodate Smith, the Court is persuaded that the City enacted the amendment in compliance with all the criteria imposed by state and federal law. Two experts in city planning, Barlow, who worked on the comprehensive zoning ordinance that was adopted in 1971, and Kotecki, who made an independent study in 1972, both acknowledged an omission in the zoning ordinance of 1971 which made no provision for off-street parking for business enterprises adjoining residential property. Nor can the amendment be deemed preferential, as it releases restrictions against off-street parking in three separate areas that may be used by commercial interests other than Smith's. Although not apparent from the testimony of plaintiffs' witnesses, plaintiffs also claim that the proposed amendment was not properly published in that it failed

928

to describe the residential areas involved and therefore deprived plaintiffs of due process. The Court finds to the contrary. The evidence was overwhelming that plaintiffs were alert to every zoning application filed by Smith on behalf of his motel and were instrumental in their denials. Plaintiffs were suspicious enough to appear at the regular meeting of the Mayor and Board of Aldermen when the amendment was proposed and discussed, and any inadequacy in the published notice was thereby waived. The City went on record in the minutes of January 2, 1973, finding that the comprehensive ordinance did not provide for off-street parking lots in residential areas adjacent to the commercial district and that the amendment was determined to be in the best interests of the public welfare and necessary to the application of the uses permitted by the adjacent zones. Under these circumstances, this Court does not and cannot find that the City's adoption of Section 523 was arbitrary or capricious, having no substantial relation to the public welfare. See South Gwinnet Venture v. Pruitt, supra. On the other hand, the Court does find that in the enforcement of Section 523, the City, through its Administrative Official and Mayor have failed to see that the 6 foot high fence around three sides of the parking lot accomplishes the purpose of the ordinance—that is to screen it from nearby residential property; and have failed to see that the overhead lights in the parking area and around the pool are of such low intensity or beam as not to shine into plaintiffs' residences.

■ Turning to the swimming pool, the record is void of its exact location. The application for a permit and the permit itself list it as being in the same zone as the motel C–B. Plaintiffs contend that it is actually constructed in the residential area converted to off-street parking. This the defendants do not deny, and the Court, for the purpose of this opinion, assumes that the swimming pool lies in whole or in part in the residential district. Defendants simply say that there is no mention of swimming pools in the entire ordinance, and therefore it was an administrative determination of Newberry that the pool does not violate the ordinance. The Court cannot agree with this conclusion. Conceding that swimming pools, as such, are nowhere mentioned in the ordinance, certainly a swimming pool may be an accessory structure having an accessory use. Accessory structure and accessory use are both defined in Sections 120.01 and 120.02 of the ordinance as a structure or use of the same lot with, of a nature customarily incidental and subordinate to, the principal use. It would be reasonable to conclude that a residence in a residential area could have a swimming pool as an accessory structure, or that a motel in a commercial district could have a swimming pool as an accessory to its use, provided the pool was located in the area or lot designated, in this instance, C–B. But a swimming pool located on a lot in a residential zone, is not, by the very words of the ordinance, an accessory use to a commerical structure, unless by special exception. "Special exception" is defined in Section 120.28 as "a use that would not be appropriate generally or without restriction throughout the zoning district but which, if controlled as to number, area, location or relation to the neighborhood, would promote the public health, safety, welfare, morals, order, comfort, convenience, appearance, prosperity, or general welfare." The section further provides that: "Such uses may be permitted in such zoning district as special exceptions, if specific provisions for such special exceptions is made in such zoning district." A swimming pool, as an accessory structure or use to a motel is not specifically provided for in an R–C zone. The Court concludes that the swimming pool, built on property zoned R–C, is a non-conforming use or accessory to the motel, and that the City through its Administrative Official erred in granting a permit for its construction on property zoned residential. This error is compounded by the use of

overhead lights over the pool and parking area of such an intensity as to "shine directly into any window in an adjacent residence", some of the plaintiffs being the owners of such residences. It is likewise difficult for this Court to understand why a zoning certificate was issued on the same day as the permit certifying that the swimming pool and parking lot complied with all zoning regulations, this before they were built.

Plaintiffs also complain of the noise from the swimming pool into the late hours of the night, and the noise of cars and trucks entering and departing the parking lot. These distractions are not so much violations of the zoning laws as they are private nuisances, which zoning ordinances are designed to protect against.

■ ■ As noted above, the only element of actual damages plaintiffs claimed in the complaint was for the diminution in value of their respective property, a claim they dropped during the course of the trial. Plaintiffs continue to claim injunctive relief, punitive damages and attorney fees. This Court, sitting as a court of equity, must fashion appropriate relief in the light of the evidence. Having found that the permit to build a swimming pool on residential property was issued in error, the Court, nonetheless, declines to direct Smith and Motor Inn to destroy the pool and return the property to its former appearance. Although plaintiffs are not required herein to have exhausted state remedies, they did fail to utilize the jurisdiction of the state chancery court or this Court available to them for emergency relief in temporarily halting the construction of the pool once excavation began. No estimates were given during the trial of either the cost to build the pool or the costs to undo the mischief. Nonetheless the Court finds that the cost to Smith and Motor Inn to make plaintiffs whole, in view of their own failure to speedily seek redress, would be prohibitive. Another factor to be weighed is that Smith, having secured the necessary permits and zoning certificates, had the tenuous right to rely on them. Accordingly, relief will be granted short of that sought. Nor does this Court find that punitive damages, under the circumstances of this case, are proper. Punitive damages lie as relief against wilfulness, such wilfulness as may be equated with maliciousness or vindictiveness. The Court finds no such intent on the part of any of the defendants. There are, however, damages that lie for other than diminution of loss of property value. The policy of the law is to achieve a reasonable balance between the right of plaintiffs' to enjoy the peace and tranquillity of a residential neighborhood, and the needs of commerce. Money cannot necessarily pay for an invasion of plaintiffs' rights, particularly in view of the fact that the invasion is a continuing one. But it and other injunctive relief may assuage some of the discomfort.

The Court therefore directs that this opinion be considered as its findings of fact and conclusions of law. For injunctive relief the Court directs that defendant, W. Hassell Smith and defendant, Oxford Motor Inns, Inc., their officers, agents, servants, employees, and attorneys, as the case may be, alter, reconstruct, or add to the existing fence in such fashion that it will comply with Sections 523.3 and 523.4 of the zoning ordinance of the City of Oxford; reinstall overhead lights over the parking lot and swimming pool or diminish the intensity of such lights so that they comply with Section 523.4 of said ordinance; and close the swimming pool at ten p. m., every night, which the Court finds is a reasonable time by which to prevent noise from its use; all to be accomplished within 60 days.

The Court further awards the sum of $6,000.00 to the named plaintiffs as actual damages to plaintiffs' personal rights and for the invasion of their property rights in a residentially zoned neighborhood, attorney fees, and costs of this action, such damages to be assessed against defendants, W. Hassell Smith, Oxford Motor Inns, Inc., Tom Newberry

and John O. Leslie, jointly and severally. The Court finds that plaintiffs are entitled to a reasonable attorney's fee, but that plaintiffs failed to offer any proof of same. The Court directs that the parties try to agree on a sum which will reasonably compensate plaintiffs' counsel. Should the parties fail to agree, then the Court directs plaintiffs' counsel to submit his fee to this Court, specifying the total hours spent on research, attendance at official city meetings on behalf of the plaintiffs, and attendance in court.

An appropriate order or orders, incorporating this opinion by reference may be submitted.